THE STATE OF OHIO, APPELLEE, *v.* FLOWERS, APPELLANT.

(No. 83AP-860—Decided March 22, 1984.)

Mr. *Michael Miller,* prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

Mr. *James Kura,* county public defender, and *Mr. Allen V. Adair,* for appellant.

WHITESIDE, J. Defendant, Dale L. Flowers, appeals from his conviction of aggravated burglary in the Franklin County Court of Common Pleas and initially raised two assignments of error, as follows:

"1. Absent proof that the defendant trespassed in the residence of another with the intention of committing a theft offense or a felony, the court below erred:

"(A) In overruling defendant's motion for a judgment of acquittal pursuant to Criminal Rule 29.

"(B) In finding defendant guilty of aggravated burglary.

"2. The trial court improperly considered appellant's failure to testify on his own behalf."

Defendant entered a basement bedroom through a window which was in a poor state of repair and no longer was attached by its hinges to its frame but had been propped up in position closing the window. The window led into a basement bedroom being occupied at the time by James Linderman and his girlfriend, Betty Weaver, who had stayed overnight with him. They heard a noise, and, according to Weaver, Linderman asked who was there, and a man stated: "I dropped some money down here. Do you have a light so I could find it?" Linderman testified that he turned on the light and asked the man what he was doing there, and the man then said that he had dropped some money. After the light was turned on, Linderman told the man to leave and started up the steps to get his brother-in-law when Weaver screamed. Weaver testified that she screamed because the man came over to the bed and pulled down the covers which she had pulled up over her. The man then quickly left through the basement window. Both Linderman and Weaver identified defendant as the man in the bedroom. Defendant was apprehended a short time later by the police in the vicinity, and at that time was carrying a bag in which was some food, some towels, a washcloth and some clothesline rope.

Defendant contends that the evidence is insufficient to sustain a conviction of aggravated burglary, which is defined by R.C. 2911.11(A) as using force to trespass in an occupied structure used as the habitation of any person, and in which a person is present or likely to be present at the time with the purpose to commit therein any theft offense or any felony. The evidence is ample to prove that defendant trespassed in an occupied structure being used by persons present as their habitation. Likewise, there is ample evidence of force, since the window involved, although easily opened, was closed and had been propped up, necessitating defendant's removing the window in order to enter the basement bedroom. The case was tried to the court without a jury, and the trial court specifically found that defendant's purpose in entering the basement was to commit a theft offense. Thus, the only issue is whether the evidence is sufficient to support that finding.

Since the intent of an accused person is only in his mind and is not ascertainable by another, it cannot be proved by direct testimony of another person but must be determined from the surrounding facts and circumstances. *State* v. *Huffman* (1936), 131 Ohio St. 27 [5 O.O. 325].

Defendant contends, however, that application of the rule of *State* v. *Kulig* (1974), 37 Ohio St. 2d 157 [66 O.O.2d 351], and *State* v. *Sorgee* (1978), 54 Ohio St. 2d 464, precludes his conviction of aggravated burglary since there are other inferences to be made from the evidence as to his intent, specifically suggesting that the evidence permits an inference that defendant's intent was to commit an act of voyeurism.

The intent with which a person forcibly trespasses in an occupied structure is that which he had in mind at the time of the entry, not one which he may have formed later, although what he does later may be indicative of his original intent. Here, however, defendant's act of pulling down the bedcovers does not give rise to a reasonable inference that defendant's original intent was to commit an act of voyeurism, any more than it does that his intent was to commit an act of rape, since the evidence is that the

basement was dark at the time of defendant's entry and that there is no basis upon which he could have been aware that persons were sleeping in this basement area. The evidence is also not clear as to whether defendant would have any basis for knowing what was under the bedcovers until he pulled them down since Weaver testified she had pulled the covers up over her. Thus, there is no reasonable inference that defendant's purpose in forcibly entering the basement was to commit the offense of voyeurism.

Likewise, there is no reasonable inference that defendant's entry into the basement was for an innocent purpose. Although defendant stated that he had dropped some money, it is highly improbable that he could have done so prior to his forcible entry into the basement since the window was in place, having been propped up, although there was a small portion of the pane broken out of one corner.

As we have noted earlier, it is difficult to ascertain the intent of a person in forcibly entering an occupied structure if he is apprehended before he commits any overt act inside the premises. Nevertheless, there is a reasonable inference that one who forcibly enters a dwelling, or a business place, does so with the intent to commit a theft offense in the absence of circumstances giving rise to a different inference. Here, there are no such other circumstances. Rather, the only other circumstance is defendant's statement that he was looking for money. Although defendant referred to money he claimed to have dropped, it is apparent that looking for money was foremost in his mind at the time of his discovery by the occupants. This fortifies the inference that defendant's intent in entering the basement was to commit a theft offense in the dwelling. Persons do not ordinarily forcibly enter a dwelling being occupied by others unless there is an intent to commit a crime, the most likely crime being a theft offense in the absence of circumstances giving rise to a reasonable inference of some other offense being the purpose of entry.

Accordingly, there was sufficient evidence to support defendant's conviction, and the first assignment of error is not well-taken.

By the second assignment of error, defendant contends that the trial court improperly considered the failure of defendant to testify on his own behalf. Unfortunately, the trial court did specifically refer to defendant's not taking the stand to testify. However, this was in the context of referring to the defense contention that the possible intent would be to commit voyeurism, a misdemeanor. The trial court later stated:

"* * * I feel that when a person is in somebody else's home, a stranger, then, a stranger has no permission to be there; and he has been seen and heard and spoken to almost contemporaneously with the entrance on the premises and with no reasonable explanation for being there, that it would be a reasonable inference that he is there to commit a theft offense."

This was the basis of the trial court's determination and is fully consistent with the discussion of the law set forth above with respect to the first assignment of error. There is no indication that the trial court considered defendant's failure to testify at trial but, rather, that court focuses upon the lack of a reasonable explanation being given to the occupants for defendant's having entered the basement area, which is a circumstance which the trial court may properly consider. The second assignment of error is not well-taken.

Defendant has raised a third assignment of error by supplemental brief, as follows:

"3. The trial court denied appellant due process of law, as

guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, by imposing a sentence upon conviction of aggravated burglary when no penalty was provided for such offense between January 5, 1983, and July 1, 1983."

By Amended Substitute Senate Bill No. 199, the 114th General Assembly amended R.C. 2911.11(B) to change the punishment for aggravated burglary from that of a felony of the first degree to that of an aggravated felony of the first degree. However, Section 6 of the Act provides that:

"* * * [section] 2903.11 * * * of the Revised Code, as amended by this act, shall take effect on January 1, 1983; however, the amendments to those sections that change * * * aggravated burglary to aggravated felonies of the first degree shall not be applied to any acts occurring before July 1, 1983."

As a result of this provision, defendant contends that, between January 5 and July 1, 1983, there was no punishment provided for aggravated burglary. We disagree.

R.C. 2911.11(B) as set forth in Am. Sub. S. B. No. 199 reads as follows:

"Whoever violates this section is guilty of aggravated burglary, aN AGGRAVATED felony of the first degree. IF THE DEADLY WEAPON THAT THE OFFENDER HAD ON OR ABOUT HIS PERSON OR UNDER HIS CONTROL IN VIOLATING DIVISION (A)(2) OF THIS SECTION WAS A FIREARM, AS DEFINED IN SECTION 2923.11 OF THE REVISED CODE, THE OFFENDER SHALL BE SENTENCED TO A TERM OF ACTUAL INCARCERATION OF THREE YEARS AND AN INDEFINITE TERM OF IMPRISONMENT PURSUANT TO DIVISION (B) OF SECTION 2929.71 OF THE REVISED CODE."

The words in all capitals are the words added by the amendment. Since Section 6 provides that the amendment to R.C. 2903.11 take effect on January 1, 1983, but that the change of aggravated burglary to an aggravated felony of the first degree shall not be applied until July 1, 1983, this essentially means that the words appearing in all capitals in the above quotation of amended R.C. 2911.11(B) shall not take effect until July 1, 1983; whereas, the remaining portions of this section are effective January 1, 1983 (actually January 5, 1983, because of the date it was enacted into law), so that between January 5 and July 1, 1983, R.C. 2911.11(B) shall be applied as if it read: "Whoever violates this section is guilty of aggravated burglary, a felony of the first degree." In short, the effect of Section 6 of Am. Sub. S. B. No. 199 is that aggravated burglary remain a felony of the first degree until July 1, 1983, when it becomes an aggravated felony of the first degree.

There is no need to rely upon the reasoning of the state predicated upon R.C. 1.47 and 1.42 and *Cox* v. *Dept. of Transportation* (1981), 67 Ohio St. 2d 501 [21 O.O.3d 313], so as to imply that a repeal of former R.C. 2911.11(B), likewise, did not take effect until July 1, 1983. Rather, the clear import of Section 6 of Am. Sub. S. B. No. 199 is that portions of amended R.C. 2911.11 take effect on January 1, 1983, and other portions take effect on July 1, 1983. Since the portion of R.C. 2911.11(B) taking effect on January 5, 1983, clearly provides that aggravated burglary shall be punished as a felony of the first degree, the statute continued to provide punishment for aggravated burglary between January 5, 1983, and July 1, 1983, when the provisions for punishment of such crime as an aggravated felony of the first degree became effective. Accordingly, the third assignment of error is not well-taken.

For the foregoing reasons, all three assignments of error are overruled, and

the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

McCORMAC, P.J., and REILLY, J., concur.