OPINION
Defendant — appellant, Roddell Fuqua, appeals his conviction in the Jefferson County Court of Common Pleas on one count of aggravated burglary and one count of complicity to commit felonious assault.
During the evening of January 30, 1996, Eulis Currenton (hereinafter "Eulis") arrived at the residence of Tiffany White (hereinafter "Tiffany"), the mother of two of his children. Eulis kicked in the door of the residence and beat up Tiffany, breaking her arm in the process. The Steubenville Police Department was summoned to the scene and Patrolman Rudy Sciarra I was the first officer to arrive. Sciarra's cruiser was equipped with a dash-mounted video camera and Sciarra himself wore a body-microphone, which recorded his voice and the voices of others while he was away from the cruiser.
At about the time an ambulance arrived to transport Tiffany to the hospital, appellant also arrived on the scene. Appellant is the father of three of Tiffany's children. Upon being informed that Eulis had beaten Tiffany, appellant became angry and uttered various threats against Eulis and Dorian Livingston, the individual appellant believed had driven Eulis to Tiffany's residence. The threats were picked up and recorded by Sciarra' s body-microphone. Specifically, appellant was heard to say that he was going to "fuck him Eulis] up," that if Sciarra did not find Eulis appellant would kill him, that Eulis was "gonna pay for this shit," and that appellant was going to "fuck Dorian up too." Sciarra asked appellant if he knew the whereabouts of Eulis to which appellant responded that Eulis had a brother who resided on South Street in Steubenville.
Within minutes of appellant's arrival, various other individuals appeared at Tiffany's residence. Specifically, the gathering included Mike White, Tiffany's brother, Shauntain and Shannon White, Tiffany's cousins, Sante and Roland Cook, appellant's cousins, and Jay Christian: As the ambulance left the residence en route to the hospital, the group followed in two cars. Appellant drove a car in which the Cooks and Shauntain White were passengers, while the remaining three individuals, including Mike White, followed in another car.
Although initially following the ambulance, at a certain point appellant turned off and proceeded to the residence of Andre Curenton, Eulis' brother. Once there, Roland Cook kicked in the door to the house and the four occupants of appellant's vehicle entered the house. Inside the house, Andre was questioned concerning the events at Tiffany's residence.
At trial there was some testimony that a fight had ensued, and that Andre had been struck in the head with a 40-ounce beer bottle, but that appellant had not personally struck him. However, Shauntain White testified that no fight had occurred, and that the four individuals were about to leave in search of Eulis when the three occupants of the other vehicle entered the house. At this point, Mike White ordered everybody to move aside, and proceeded to shoot Andre three times in the back with a .25 caliber handgun killing him.
Following the shooting, the seven individuals returned to their respective vehicles and drove to the residence of Dorian Livingston. According to Shauntain White and a taped statement made by appellant, Livingston exited his home with a .32 — caliber handgun and fired several shots in the air. Livingston denied this and a search of the premises the following, day failed to locate any weapons.
Following the alleged confrontation at Livingstone's residence, the individuals again returned to their vehicles and drove off. In the car driven by appellant, Shauntain White was the front passenger and the Cooks sat in the rear, with Roland Cook seated directly behind appellant. Once the vehicles left, Livingston got into his vehicle and began driving. While traveling on Brady Avenue, Livingston became aware that he was being followed by appellant's vehicle. At the intersection of Brady and Oregon Avenues, Livingston made a right turn, at which point Roland Cook fired a round from a Tec-9 weapon into Livingston's vehicle.
Livingston then drove to a Bob Evans restaurant and called the police. Appellant's vehicle was later pulled over by a police cruiser and the occupants were brought to the Steubenville Police Department, where appellant gave a taped statement to Detective John Lelless.
On March 8, 1996 appellant was indicted on a single count of aggravated burglary in violation of R.C. 2923.11 (A) (1), (2), and (3). An amended indictment was filed on March 26, 1996, which indictment contained one count of aggravated burglary, one count of complicity to commit felonious assault, in violation of R.C. 2903.11 (A) (2) and 2923.03 (A), and one count of complicity to commit aggravated murder, in violation of R.C. 2903.01(B) and2923.03 (A). In addition, all three counts contained firearm specifications.
A jury trial commenced on November 12, 1996 and on November 15, 1996 a jury found appellant not guilty on the charge of complicity to commit aggravated murder, but guilty on the remaining charges of aggravated burglary and complicity to commit felonious assault. In addition, the jury found appellant not guilty on all of the firearm specifications. For the aggravated burglary charge appellant received a sentence of 5 to 25 years and for the charge of complicity to commit felonious assault appellant was sentenced to serve 5 to 15 years. The trial court ordered both sentences to run concurrently.
On December 4, 1996, appellant filed a timely notice of appeal raising three assignments of error. Because appellant's first and second assignments of error relate to the weight of the evidence, we treat them together. Appellant's first two assignments of error state:
 "[1] THE JURY VERDICT OF GUILTY FOR THE CRIME OF AGGRAVATED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "[2] THE JURY VERDICT OF GUILTY FOR THE CRIME OF COMPLICITY TO FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, at 387. "Weight of the evidence concerns `the inclination of the greateramount of credible evidence offered in a trial to support one side of the issue rather than the other.'" Id. (Emphasis sic). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial.Id., at 390 (Cook, J., concurring). With respect to the charge of aggravated burglary, the version of R.C. 2911.11 (A) in effect at the time of the offense provided that:
 "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:
 "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 "(2) The offender had a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;
 "(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."
Appellant argues that plaintiff — appellee, the State of Ohio, failed to show that appellant entered the Curenton residence with intent to commit a felony. Rather, appellant claims the testimony at trial showed that appellant went to the residence with the purpose of committing assault, a misdemeanor, which would have rendered him guilty of burglary, rather than aggravated burglary. Specifically, appellant claims that in his taped statement to Detective Lelless, appellant stated that he entered the residence in order to fight Eulis, not to kill him. In addition, appellant notes that he was not the individual who struck or attempted to strike Andre with the beer bottle.
In response, appellee claims that the evidence was sufficient to show that appellant entered the Curenton residence with purpose to commit felonious assault. At the time of the offense, appellee notes that R.C. 2903.11 defined felonious assault as:
"(A) No person shall knowingly:
(1) Cause serious physical harm to another;
 (2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
Appellee points to various circumstances surrounding the events in question as evidence of appellant's attempt to commit felonious assault. Specifically, appellee notes that upon discovering that the mother of his children had been beaten appellant became incensed and uttered numerous threats in the presence of Sciarra, including threats that he was going to "fuck up" Eulis and Livingston. In addition, in his taped statement, appellant told Lelless that although he was not planning to kill Eulis, he intended for Eulis to feel the same pain that Tiffany had felt.
Ordinarily, since the intent of an accused person is only in his mind and is not ascertainable by another, it cannot be proved by direct testimony of another person but must be determined from the surrounding facts and circumstances. State v. Flowers (1984),16 Ohio App.3d 313, 314. However, in the instant case, the jury heard direct expressions of appellant's intent by means of recorded statements made by appellant. Specifically, the jury heard the statements recorded by Sciarra's body — microphone, and the taped statement given to Lelless. These statements clearly expressed an intent to commit more than a simple assault.
Even taking appellant at his word that he only wanted Eulis to experience the same pain as Tiffany had experienced, this would necessarily involve the infliction of serious physical harm. Based on these direct expressions of appellant's intent, viewed in conjunction with the factual circumstances surrounding the night in question, the jury was entirely justified in concluding that appellant entered the Curenton residence with the intent to commit a felony. To the extent that appellant concedes that he intended to commit an assault, we fail to see how the jury committed a manifest miscarriage of justice in concluding that appellant intended the resulting harm to be of a serious nature.
Accordingly, appellant's first, assignment of error is without merit.
With respect to the charge of complicity to commit felonious assault on Livingston, appellant claims that in his taped statement he stated that he had been following Livingston in order to see where he was going. In addition, appellant stated that he did not know that Roland Cook had a firearm on his person until after the shot had been fired. As such, appellant claims that appellee failed to show the degree of knowledge required to convict for complicity to commit felonious assault.
In response, appellee notes that in his taped statement appellant concedes that he knew Roland Cook had a gun on his person prior to the time that appellant drove up behind Livingston. Appellee notes that appellant did nothing to prevent Cook from firing nor did appellant go to the police after the shooting. As such, appellee claims that appellant's conviction as an aider and abettor to the felonious assault of Livingston was not against the manifest weight of the evidence.
At the time of the offense, R.C. 2923.03 provided that:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *
 (2) Aid or abet another in committing the offense."
Appellant was charged under R.C. 2903.11(A) (2) which at the time provided that:
"(A) No person shall knowingly:
 (2) Cause or attempt to cause physical harm to another by means of a., deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code." (Emphasis added).
As such, appellant appears to argue that he was without knowledge as to one of the circumstances of the alleged crime, namely, that Roland Cook had a firearm on his person.
As defined in R.C. 2901.72 (B):
 "[A] person has knowledge of circumstances when he is aware that such circumstances probably exist."
The record in the instant case fully supports the jury's determination that appellant had knowledge that Roland Cook was carrying a weapon. Appellant conceded as much in his taped statement to Lelless:
"LELLESS: Who all had guns in your car?
 "DEFENDANT: Far as I know, Roy [Roland Cook] which I really didn't know he had the gun, except for. . .
 "LELLESS: Well, you had to know because he fired a shot before you all went up there.
 "DEFENDANT: No, what I'm saying I didn't know he had the gun until the shots was fired.
"LELLESS: On Oregon — at Oregon and Brady
 "DEFENDANT: On Sixth. After the shots was fired, he's like, `I'm gonna bust a cap at him.' Then we got up on Brady, that's when the shot was fired."
In addition, both appellant and Shauntain White claimed that while they had been at Livingston's residence, the latter had fired shots at them. This being so, it was entirely reasonable for the jury to infer that appellant would not have followed Livingston without knowledge that someone in his vehicle was armed.
Accordingly, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."
Specifically, appellant claims counsel failed to ask for an instruction on the lesser charge of burglary, failed to thoroughly cross-examine Shauntain White concerning the felonious assault of Livingston, and that counsel was prejudiced against him inasmuch as counsel told appellant that he was guilty prior to trial. As such, appellant claims he was denied a fair trial.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. State v. Sallie (1998),81 Ohio St.3d 673, 674. A defendant must show that counsel acted unreasonably and that but for counsel's errors, there exists a reasonable probability that the result of the trial would have been different. See id.
This standard reiterates the two prong test announced inStrickland v. Washington (1984), 466 U.S. 668, at 687, wherein the United States Supreme Court stated:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
"Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second — guessing the strategic decisions of trial counsel." Statev. Carter (1995), 72 Ohio St.3d 545, 558. Rather, trial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable professional assistance.Sallie, supra, at 675.
An instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. State v. Goodwin (1999), 84 Ohio St.3d 331,345. If the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state on the remaining elements, which by themselves would sustain a conviction on a lesser included offense, then a charge on the lesser included offense is required. State v. Kilby (1977), 50 Ohio St.2d 21, 24-25. Conversely, if the jury could not reasonably find against the state on an element of the crime, then a charge on the lesser included offense is not only not required, but is also improper.Id., at 25. Hence, an instruction on burglary, as defined in R.C.2911.12, would only have been appropriate if the jury could reasonably have found that appellant intended to commit a misdemeanor rather than a felony. As we have already noted, the evidence was more than sufficient to support a finding that appellant intended to cause serious physical harm upon entering the Curenton residence. There was no evidence that appellant sought to inflict less than serious physical harm. As such, an instruction on the lesser included offense of burglary would have been improper. Moreover, the failure to request such an instruction does not constitute ineffective assistance of counsel. Goodwin, supra, at 347. See, also,State v. Griffie (1996), 74 Ohio St.3d 332, 333. ("Failure to I request instructions on lesser included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel.")
With respect to counsel's cross-examination of Shauntain White, we fail to see how counsel's performance fell below an objective level of reasonableness. Contrary to appellant's assertion, our review of the transcript indicates that Shauntain White was effectively cross-examined concerning the felonious assault on Livingston. As for appellant's remaining complaints against counsel, we note that many of appellant's concerns were raised in a pretrial motion to dismiss counsel, which the trial court overruled following a hearing. Appellant has not raised the overruling of said motion on appeal, and we find no error, let alone plain error, on the part of the trial court.
Nor does appellant offer any support for his claim that he did not receive a fair trial due to counsel telling him that she thought he was guilty. Nowhere throughout the proceedings did counsel express this alleged sentiment to the prejudice of appellant. If a lawyer must be personally convinced of his or her client's innocence in order to provide effective representation, then "fair trials" would be few and far between. In the instant case, the effectiveness of appellant's counsel is evident from the fact that appellant was acquitted of all three firearm specifications and the more serious charge of complicity to commit aggravated murder. Accordingly, appellant was not denied the effective assistance of counsel.
Appellant's third assignment of error is without merit. Having found no merit to any of appellant's assignments of error, the judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
APPROVED:
 _________________________ Gene Donofrio Judge