OPINION
This is an appeal from the Mentor Municipal Court. Appellant, Bruce J. Riskin, appeals his conviction and sentence for receiving stolen property.
On April 20, 1998, appellant was charged with a single count of receiving stolen property, a misdemeanor of the first degree, in violation of § 131.26 of the city of Mentor Code. At the initial appearance on April 27, 1998, appellant entered a plea of not guilty to the charge. On that same date, appellant waived his right to a speedy trial. A bench trial occurred on August 3, 1998.
At the trial, appellee, the city of Mentor, called Michael Reed ("Reed") to the stand. He testified that he and appellant were co-workers at Classic Pontiac, Oldsmobile, and GMC in Painesville, Ohio.[1] In February 1998, while he was at work, he noticed check number 565 missing from the middle of his checkbook. After he contacted his bank, he discovered that the missing check was made payable to the Office Depot located in Mentor. Reed's wife contacted the police. Reed informed them that neither he nor his wife were at the Office Depot on that date and he did not give anyone permission to use the check. The prosecutor asked Reed if he recognized exhibit one, check number 565. Reed replied that it was his missing check, but the writing on the bottom of the check was not his signature.
Following Reed's testimony, appellee called Officer Edward Miller ("Officer Miller") of the Mentor Police Department to testify. Officer Miller testified that he became involved in the investigation involving the stolen check in February 1998 after Reed's wife reported it stolen to the authorities. Officer Miller obtained the check and placed it into evidence. He then went to Reed's place of employment to obtain a copy of a purchase order with appellant's name on it and a copy of appellant's job application. He noticed that there were similarities between the penmanship on the application and the handwriting on the check.[2] Officer Miller proceeded to contact appellant for an interview. During the interview, Officer Miller took a handwriting sample from appellant. Thereafter, the check and the handwriting sample were submitted to the Lake County Crime Lab.
On cross-examination, defense counsel asked Officer Miller about the fingerprints found on the check. Officer Miller stated that the fingerprints were sent to the lab and that he believed they did not match appellant's fingerprints. He indicated that no handwriting samples or fingerprints were taken from other co-employees or customers. Officer Miller also revealed that neither the clerk nor the store manager at the Office Depot identified appellant as the individual who wrote the check. According to Officer Miller, they told him, "they had no idea — they didn't remember [the incident]." Thus, he did not take any photographs of appellant with him when he questioned them.
At the conclusion of Officer Miller's testimony, appellee called Andrew Symanski ("Symanski"), a forensic document examiner at the Lake County Crime Lab. Symanski related that he compared the penmanship on check number 565 with handwriting samples from appellant and Reed. He testified that "based on the evidence submitted that the handwriting on [appellant's] handwriting specimen * * * is very probably the handwriting that appears on the check." He added that in his opinion, after analyzing Reed's exemplar, that Reed was "not the writer of the handwritten entries on the face of the check." On cross-examination, Symanski revealed that he was unable to match eight out of the eleven letters on the signature line of check number 565. At the completion of all of the testimony, the trial court stated that "the case [was] submitted."
On August 6, 1998, appellant was found guilty of receiving stolen property. On September 11, 1998, he was fined $350 and sentenced to sixty days in jail, with fifty days of the sentence suspended. Appellant was also ordered to pay restitution and serve two months of probation. Appellant filed a motion to stay execution with the trial court, which was granted. Appellant timely filed the instant appeal and now asserts the following assignment of error:
 "Appellant's conviction was against the manifest weight of the evidence, and was based on evidence that did not satisfy [appellee's] burden of proving each ekement [sic] of the offense beyond a reasonable doubt."
Appellant's sole contention is that his conviction was against the manifest weight of the evidence and that the evidence submitted did not satisfy appellee's burden of proof. The core assertion of appellant's argument, however, is that he cannot be found guilty of receiving stolen property because appellee presented insufficient evidence that he was the maker of the stolen check.
Therefore, appellant's argument under this assignment appears to be a hybrid one. He places significant emphasis on appellee's failure to provide sufficient evidence as to the maker of the check at the time of the incident in question. This aspect of his position clearly attacks the sufficiency of the evidence, a central element to the charge involved in the instant matter, which this court determines is his primary argument.
A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction."State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In State v.Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11, we held:
 "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) (Emphasis added.) * * *."
In Schlee, supra, unreported, at 10, we also stated that:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *."'"
Appellant was convicted of receiving stolen property, in violation of § 131.26 of the city of Mentor Code, which states that
 "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft." The requisite culpable mental state of "knowing" is defined in R.C. 2901.22(B) as, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
In the instant matter, appellee was required to prove beyond a reasonable doubt that appellant acted "knowingly." Appellee may present circumstantial evidence to prove an essential element of the offense. State v. Jenks (1991), 61 Ohio St.3d 259, 263-264. The trier of fact may determine an accused's intent from the facts and circumstances present in a particular case. State v. Seiber
(1990), 56 Ohio St.3d 4, 13-14. Because the intent of an accused person is only in the mind of the accused and is not ascertainable by another, it cannot be proven by the direct testimony of another person, but must be determined from the surrounding facts and circumstances. State v. Flowers (1984), 16 Ohio App.3d 313, 314, citing State v. Huffman (1936), 131 Ohio St. 27. Additionally, circumstantial evidence can be used to support a conviction "even if that evidence is reconcilable with a reasonable theory of innocence." State v. Singletary (Aug. 26, 1994), Ashtabula App. No. 93-A-1786, unreported, at 5.
In the case sub judice, appellee presented the testimony of Reed, Officer Miller, and Symanski. Reed's testimony indicated that a check was taken from his checkbook and that neither he nor his wife used that check. Officer Miller's testimony revealed that he noticed similarities between the handwriting on appellant's employment application and the missing check, which was made payable to Office Depot. Symanski testified that it was very probable that the handwriting that appeared on the check belonged to appellant. However, in his opinion, the handwriting did not match Reed's penmanship. Appellant claims that appellee did not meet its burden of proving the elements of the offense charged. We agree.
In the case at bar, the only evidence to link appellant to the crime charged was Symanski's testimony that "based on the evidence submitted that the handwriting on the handwriting specimen, including the nonrequest and request samples purportedly by [appellant, was] very probably the handwriting that appear[ed] on the check." Further evidence revealed that only three of the letters found on the signature line of the check resembled appellant's writing as found on his employment application and handwriting exemplar. It is apparent that the factfinder gave credence to appellee's witnesses. However, appellee did not prove beyond a reasonable doubt that appellant received, retained, or disposed of the check or that he knew it was stolen. Also, according to Officer Miller, the clerk and manager at the Office Depot did not identify appellant as the drawer of the check. Instead, they both stated that they could not remember who filled out the check. Hence, we conclude that there was insufficient evidence upon which to convict appellant of the offense for which he was charged.
Specifically, the only writing samples taken were from Reed and appellant. No handwriting specimens were obtained from Reed's wife or his co-workers. Moreover, the fingerprints on the check did not match those taken from appellant. After viewing the evidence in a light most favorable to the prosecution, it is our determination that appellee did not prove all of the elements of the offense beyond a reasonable doubt. Thus, the trial court erred in finding appellant guilty of receiving stolen property.
For the foregoing reasons, appellant's assignment of error is sustained. Accordingly, the judgment of the Mentor Municipal Court is reversed and judgment is entered for appellant.
NADER, J., O'NEILL, J., concur.
[1] Reed testified that Classic Pontiac, Oldsmobile, and GMC employed about fifty people and from February 1, 1998 to February 14, 1998, approximately five hundred customers purchased from or called his place of employment.
[2] Appellant's attorney objected to the question, as appellee did not lay a foundation, but the trial court overruled the objection by stating that defense counsel would "be able to attack it on cross-examination." During the cross-examination, Officer Miller admitted that he did not have any training in handwriting analysis.
We note that since handwriting testimony involves the process of comparison, a lay witness is not permitted to render his opinion by making a physical comparison of the contested writing with genuine standards as he has no more skill for comparison than do the jurors. See, generally, Bowles v. Kennermore (C.A.4, 1944), 139 F.2d 541. However, a lay witness may furnish an expression on handwriting comparison if he shows a long time familiarity with a person's penmanship. See, generally, State v.Fortier (R.I. 1981), 427 A.2d 1317.