JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his conviction for aggravated burglary in violation of R.C. 2911.11.[1] For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In the morning and afternoon of August 7, 2002, defendant and Bonnie Whery, a Cleveland police officer, spoke several times by telephone. Defendant and Whery, once engaged to be married, had known each other since early 2000. One of the calls made him suspicious that she had a male guest. Sometime between 11:00 p.m. and midnight on the 7th, defendant broke into Whery's home, whereupon the guest fled to the basement and Whery locked herself in a bathroom. Defendant repeatedly pounded on the door. When Whery thought he had broken through, she fired her service revolver through the bathroom door. Unharmed, defendant fled the premises. Defendant was indicted for aggravated burglary and felonious assault. Following a bench trial, defendant was acquitted on the felonious assault charge but found guilty of aggravated burglary. Defendant was sentenced to 120 days in jail, six months home detention, and five years probation. This timely appeal followed in which defendant presents one assignment of error:
 {¶ 3} The trial court erred when it entered a verdict of guilty against the defendant-appellant, when the evidence did not support such a verdict.
 {¶ 4} Defendant argues that the state's evidence against him for aggravated burglary is insufficient and his conviction is against the manifest weight of the evidence.
 {¶ 5} When a court reviews a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1991),78 Ohio St. 380, 386.
 {¶ 6} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing Tibbs v. Florida (1982) 457 U.S. 31, at 42.
 {¶ 7} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Braden, 98 Ohio St.3d 354,2003-Ohio-1325, 785 N.E.2d 439, at ¶ 54, citing Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 8} In the case at bar, defendant was convicted of R.C.2911.11(A)(1), which defines the offense of aggravated burglary. The statute, in part, provides:
 {¶ 9} No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 10} the offender inflicts, or attempts or threatens to inflict physical harm on another * * *.
 {¶ 11} Aggravated burglary does not require actual physical harm. It is sufficient if physical harm was attempted or threatened. Moreover, a defendant may form the purpose to commit a criminal offense at any point during the trespass, and the trier of fact can infer that intent from a forcible entry. Statev. Fontes (2000), 87 Ohio St.3d 527, syllabus.
 {¶ 12} In order for the state to prove defendant committed aggravated burglary it had to show that he intended to forcefully trespass into Whery's home and then, that he had the purpose, at some point during that trespass, to inflict, or attempt or threaten to inflict physical harm upon her. Contrary to defendant's claim, the state was not required to show that defendant physically harmed Whery. See, State v. Mitchell,
(Sept. 7, 1995), Cuyahoga App. No. 56575, Counsel Corrected Nunc Pro Tunc September 15, 1995; State v. Frazier (1979),58 Ohio St.2d 253, 389 N.E.2d 1118.
 {¶ 13} Whery's testimony, if believed, is sufficient to demonstrate that defendant either inflicted physical harm or threatened to do so once he was inside her house. Whery testified she and defendant had argued on August 6th, the night before he broke into her home. On the 7th, during one of their several phone calls, she agreed to go to defendant's home later that night for a visit. Even though she told defendant she would come over, Whery testified she never intended to visit at all. Instead, Whery testified she meant to stay at home that night because James Walton, a male guest and former boyfriend was visiting.
 {¶ 14} Whery stated defendant kept calling her on her cell phone throughout the evening. She did not answer any of the calls except the last one. Whery described that conversation and the events that subsequently transpired as follows:
 {¶ 15} A: He asked me, he said, Do you have somebody over there? I was like, Never mind that. He was like, I thought you were coming over. I said — I told him, I said, I can come right now. He said, I'm about to go to sleep. I said okay, and he was like okay, and he hung up the phone.
 {¶ 16} Q: That was the end of the conversation?
 {¶ 17} A: That was the end of the conversation.
 {¶ 18} Q: Did you see Mr. Martin after you talked to him on the phone after you hung up with him?
 {¶ 19} A: He came over like about 15, 20 minutes later. He was banging on the door, he was screaming, he was saying, Bonnie, open the door. And I looked at James and said, He's crazy. I went to the door, he said, You're busted. Open the door.
 {¶ 20} Tr. 53.
 {¶ 21} Whery went to the front door and asked defendant to leave the premises. Defendant broke into the house by breaking two glass panes in the front door and then letting himself in. Whery described what happened just before defendant entered the house. "When he broke out the first window I felt a sharp pain in my stomach. I knew that I was hit with something but I didn't know to what extent I was injured." Tr. 59. On cross-examination, Whery stated that when defendant first broke the glass on her front door, that is when she felt him "hit me in my stomach." Tr. 83. Defendant admits he was armed with a nunchak, a karate weapon.
 {¶ 22} Walton testified that when defendant was in the process of breaking into the house, he could see Whery near the front door. He described what he saw as follows:
 {¶ 23} Q: Could you see the door clearly?
 {¶ 24} A: Yeah, I could.
 {¶ 25} * * *
 {¶ 26} Q: Once she went to the door, you said that you heard a boom?
 {¶ 27} A: Well, like I heard glass break, you know.
 {¶ 28} Q: What did Miss Whery look like when that happened?
 {¶ 29} A: She went back like she was hit in the stomach. I though she was shot in the stomach.
 {¶ 30} Tr. 26-27.
 {¶ 31} Once inside the house, defendant located Whery, who had locked herself in a darkened bathroom. Whery had her service revolver with her. Defendant kept pounding on the bathroom door with something other than his fist. Whery stated she was afraid for her life. When she thought defendant had broken through the door, Whery fired her gun at the door, and defendant fled. Whery testified that the next day her stomach area was sore.
 {¶ 32} Defendant admits he had the karate weapon with him when he trespassed into Whery's home. He denies, however, that he ever used the weapon to hit Whery in the stomach. Defendant says it is possible that a set of window blinds fell off the front door while he was breaking into the house. The blinds, he claims, hit Whery in the stomach. A jury, however, is not required to accept a competing inference of innocence if it may infer guilt, beyond a reasonable doubt, from the same circumstances. State v.Flowers (1984), 16 Ohio App.3d 313, 475 N.E.2d 790.
 {¶ 33} On the record before this court, reasonable minds could find that defendant hit Whery while he was breaking into her home. She felt pain in her stomach, and Walton saw her double over.
 {¶ 34} There is also ample evidence upon which the trier of fact could reasonably find that defendant threatened to physically harm Whery. Whery described defendant's anger as he broke the front door: he was yelling and told her she was "busted." Whery stated she was afraid and in fear of her life and that she locked herself in the bathroom for protection. Defendant followed her and was yelling and pounding on the door trying to get into the bathroom. A trained police officer, Whery fired her gun because she thought defendant had broken into the bathroom. From this evidence one could reasonably infer that defendant had the intent to physically harm Whery. At a minimum, defendant's actions can certainly be construed as threatening her with physical harm.
 {¶ 35} Accordingly, the evidence is sufficient to establish each and every element of aggravated burglary, including the infliction of physical harm or the threat of it, and sufficient to convince the average mind of defendant's guilt beyond a reasonable doubt. Moreover, in reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence. Defendant's sole assignment of error is overruled.
Judgment accordingly.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and McMonagle, J., Concur.
[1] A felony of the first degree.