JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} After a bench trial, defendant-appellant, Michael Young, was convicted of breaking and entering, in violation of R.C. 2911.13(B). On appeal, he contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We affirm.
I. A Revenge Mission
 {¶ 2} Andrew Franklin testified at trial that he, his brother Brian Franklin, his sisters Lydia Franklin and Lisa Franklin, and his friends Charles Finley and Monique Wynn went to a house party in Cleveland late in the evening on June 10, 2006. They saw Quincy Christinger, the father of Lydia Franklin's two children, at the party. Brian Franklin argued with Christinger and then hit him in the face. Christinger ran off, and the Franklin entourage immediately left the party and went home.
 {¶ 3} According to Lisa Franklin, as they were riding home, Christinger repeatedly called Lydia on her cell phone and told her that he was coming to their house to "f — you all up."
 {¶ 4} Andrew testified that the entourage arrived at their home in South Euclid around 3 a.m. According to Andrew, as he, Finley, and a neighbor sat outside drinking, a van pulled up, and three or four males, including Young (who is Christinger's brother), got out of the van "looking for Brian." As Christinger screamed, "Where Brian at?" Young tried to kick in the front door of the home. *Page 4 
As Andrew pulled Young away from the front door, he heard gunshots, turned, and saw Christinger holding a gun. Although Andrew testified at trial that he did not see Young with a gun, he admitted that in his written statement to police given only an hour or two after the incident, he stated that he saw more than one male carrying a gun and wrote, "the boys were all shooting to kill us."
 {¶ 5} Finley testified that five or six guys got out of the van and "rushed us." According to Finley, "at least" three of the males had guns. Finley testified that he and an unidentified male struggled, but after hearing a gunshot, the male let him go and he crawled around to the back of the house. Although Finley testified at trial that he was shot in the calf when the gun in his assailant's waistband went off accidentally, he admitted that shortly after the incident, he identified Christinger from a photo array as the man who had shot him.
 {¶ 6} Lisa Franklin testified that she was inside the house when she heard yelling outside and then a gunshot. She ran downstairs and saw a man standing at the front door. As she ran to the back of the house, she heard another shot, so she went outside to see what was happening. She saw Christinger shooting into the house and saw Young standing in the front yard. She screamed, "It's Quincy," and either Christinger or Young replied, "Yeah, it's us." As she turned to run back into the house, Young ran after her. Monique shut the door on Young as Lisa ran in. Once inside the house, Lisa called the *Page 5 
police and told them that Christinger, Young and a male known as "Brother" were "shooting up" their house. When she went back outside, she saw the van driving away.
 {¶ 7} South Euclid police officer Chris Khoenle testified that he arrived on the scene only minutes after the dispatch. Brian and Andrew Franklin told him that the incident had begun earlier at the party when Brian punched Christinger and Christinger told him, "Okay, we'll settle this on Hinsdale." Khoenle testified that Brian and Andrew told him that Christinger had shot Finley, and Monique told him that during the incident, Young "was trying to kick in the front door *** trying to get to Brian."
 {¶ 8} As Khoenle was interviewing the Franklins, Doris Franklin-Andrew, Brian, Lydia, and Lisa's mother and owner of the South Euclid home-answered a cell phone and became agitated. She told Khoenle that the caller was Christinger and he was threatening to go to the hospital where Finley had been taken and shoot him in the head.
 {¶ 9} Khoenle and another officer recovered three shell casings in the driveway by the front of the house. They found a bullet hole in the front window of the house and, upon further inspection, found the bullet from this hole lodged in the freezer in the kitchen directly behind the window. Another bullet had gone through the downspout and lodged in the aluminum siding of the home. The officers also found bullet fragments in a car parked in the driveway. *Page 6 
Analysis of the shell casings by the Bureau of Criminal Identification and Investigation indicated they were Remington brand .380 caliber cartridge cases all fired from the same gun. The bullet fragments were also from a .380 semiautomatic pistol.
 {¶ 10} Young was subsequently charged with two counts of felonious assault against Finley, one count of felonious assault against Andrew Franklin, one count of aggravated burglary, and one count of improperly discharging a firearm into a residence. All of the counts contained one-and three-year firearm specifications.
 {¶ 11} The trial court subsequently found Young guilty of breaking and entering, in violation of R.C. 2911.13(B), a lesser included offense of aggravated burglary, with a one-year firearm specification. He was acquitted of all other charges. The court sentenced him to six months incarceration to be served consecutive to the one-year firearm specification, for a total term of 18 months.
II. Sufficiency and Manifest Weight of the Evidence
 {¶ 12} Young argues there was insufficient evidence presented to support his conviction and that his conviction was against the manifest weight of the evidence.
 {¶ 13} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average *Page 7 
mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} While the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52. When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence and consider the credibility of witnesses. State v. Thomas (1982), 70 Ohio St.2d 79,80. The court may reverse the judgment of conviction if it appears that the factfinder "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins at 387. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Id. at 388. *Page 8 
 {¶ 15} Here, Young's conviction for breaking and entering was supported by the manifest weight of the evidence.
 {¶ 16} Under R.C. 2911.13(B), regarding breaking and entering, "[n]o person shall trespass on the land or premises of another, with purpose to commit a felony." Criminal trespass, under R.C. 2911.21, is when a person "without privilege to do so, *** knowingly enter[s] or remain[s] on the land or premises of another."
 {¶ 17} With respect to the trespass element, the evidence demonstrated that Young and the other males, at least several of whom were carrying guns, got out of the van and "rushed" Andrew, Finley, and the neighbor. Young chased Lisa Franklin as she was attempting to get back inside the house, and Monique shut the door on him as Lisa ran in the house. As Young attempted to kick in the front door, Lisa called the police and reported that Young, Christinger, and "Brother" were "shooting up" the house. On this evidence, it is apparent that Young was trespassing on the Franklins' property on the morning of June 10, 2006.
 {¶ 18} Likewise, it is apparent that Young's purpose while trespassing on the Franklins' property was to commit a felony; i.e., to hurt or kill Brian Franklin. Intent is determined by the surrounding facts and circumstances. State v. Smith, 8th Dist. No. 84292,2004-Ohio-6111, ¶ 20, quoting State v. Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus. It is *Page 9 
reasonable to infer that one who forcibly enters a dwelling does so with the intent to commit a criminal offense therein. Id., citingState v. Flowers (1984), 16 Ohio App.3d 313, paragraph one of the syllabus, overruled on other grounds, State v. Fontes,87 Ohio St.3d 527, 2000-Ohio-472.
 {¶ 19} Here, Young's intent to harm Brian can easily be inferred from his actions during the incident. He arrived at the Franklins' house only minutes after his brother, Christinger, had called Lydia Franklin and repeatedly threatened to "f — you all up." He got out of the van with the other males and "rushed" Andrew and Finley. He chased Lisa as she ran back into the house and tried to kick in the front door to the house to find Brian. It is apparent that Young accompanied Christinger on a revenge mission against Brian that morning.
 {¶ 20} With respect to the firearm specification, Lisa testified that she told the police that Young, Christinger, and "Brother," were "shooting up" the house. In addition, Andrew testified that he saw more than one male carrying guns during the incident and that "the boys were all shooting to kill us." On this evidence, the trial court's judgment that Young had a firearm on his person or under his control during the incident was not against the manifest weight of the evidence.
 {¶ 21} After reviewing the record, weighing the evidence, and considering the credibility of the witnesses, we find that Young's conviction was supported by *Page 10 
the manifest weight of the evidence. His first and second assignments of error are therefore overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR. *Page 1