OPINION
{¶ 1} Appellant, Melvin Blackburn, appeals the judgment of the Trumbull County Court of Common Pleas. The Trumbull County Grand Jury indicted appellant on four counts. Count one was aggravated burglary with a firearm specification; count two was abduction; count three was burglary; and count four was violating a protection order or consent agreement. Appellant pled not guilty to all counts, and a jury trial was held. Appellant was found guilty of counts one, two, and four. He was sentenced to four years for count one, one year for the firearm specification, to be served consecutive to the aggravated burglary sentence, and one year each on counts two and four, both to be served consecutive to the sentence for aggravated burglary.
 {¶ 2} Appellant married Patricia McCree Blackburn, the victim in this case, in 1988. They had one child together. The couple separated in 1995, and they were divorced in 2001. There are several individual instances that gave rise to the charges in this case.
 {¶ 3} The first two counts involve an incident that occurred on October 24, 1999. The victim had previously purchased a handgun, in an effort to deter appellant from harassing her. In the summer of 1999, the victim discovered that the handgun was missing. The victim testified that the next time she saw the gun was when appellant was holding it as he was climbing through her living room window. She attempted to close the window on appellant but was unsuccessful. She then called 911. While the victim was calling 911, appellant was ripping the telephone cords out of the wall. The victim's 911 call got through to the police, but was disconnected before the victim spoke to anyone. A struggle ensued between appellant and the victim. Appellant was threatening to kill the victim.
 {¶ 4} An officer was dispatched to the victim's residence in response to the 911 hang-up call. Calls that were returned to the victim's residence were unanswered. The victim told appellant that she would "get rid" of the police. She opened the door slightly and told the officer that everything was okay. The officer asked her for her keys to the house to prove that she lived there. She provided the keys and showed the officer that they worked in the front door. The officer asked the victim if she was okay a few more times, and the victim again responded that she was. The officer then left the residence. The victim testified that appellant was hiding behind the door throughout her conversation with the police and had a gun pointed at her. She testified that appellant threatened to kill her and the officer if she told the officer what was going on.
 {¶ 5} After the police officer left, the victim was able to talk appellant into giving her the gun. Appellant then told her that he had a second gun and that he needed a ride. The victim drove appellant to his requested destination.
 {¶ 6} In the summer of 2000, the victim obtained a protective order against appellant. The order prohibited appellant from coming within one hundred yards of the victim or her residence. The parties stipulated that appellant pled no contest to violating the protective order in Warren Municipal Court. However, the trial court construed this stipulation as a stipulation that appellant pled guilty or was convicted of violating a protective order.
 {¶ 7} On December 15, 2000, the victim saw appellant walking up her driveway. She hid in the basement. When she came out of the basement, she discovered that someone had broken some of her car windows.
 {¶ 8} The third count involved an incident that occurred on December 17, 2000. The victim returned to her home to find a window broken. A garden hose was placed through the window into the house and left running. The only things taken from the house were some family photographs and some of their child's videos. The jury found appellant not guilty of this count.
 {¶ 9} The fourth count arose from the events of December 23, 2000. The victim was running errands with her sister. The victim was looking for a parking spot when appellant drove at her car with his car. Appellant then chased the victim around the parking lot. At some point, appellant stopped his car and retrieved a gun from the trunk. The police responded, but they could not locate appellant.
 {¶ 10} Appellant raises seven assignments of error. These assignments of error will be addressed out of order. Appellant's first assignment of error is:
 {¶ 11} "The trial court's jury instructions violated appellant's right to due process of law guaranteed by the Ohio and federal Constitutions."
 {¶ 12} When instructing the jury, the trial court did not include a definition of purposely or recklessly — the requisite mental states for aggravated burglary and violating a protective order, respectively. Appellant's trial counsel did not object to these omissions.
 {¶ 13} Failure to object to the court's jury instructions waives any alleged error, unless the outcome of the trial clearly would have been different.[1] Therefore, our review of the jury instructions is to determine if there was plain error.[2]
 {¶ 14} The Supreme Court of Ohio has held that the "[f]ailure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does notper se constitute plain error under Crim.R. 52(B)."[3] In Adams, the trial court likewise failed to instruct the jury on the requisite mental state for the criminal act. However, the Supreme Court of Ohio held that this failure did not amount to plain error, because the defendant's only defense was that he was not the person who inflicted the harm on the victim.[4]
 {¶ 15} Appellant was charged with aggravated burglary. The trial court instructed the jury that they must:
 {¶ 16} "[F]ind beyond a reasonable doubt that on or about October 24, 1999, in Trumbull County, Ohio, that the Defendant did by force, stealth or deception, trespass in an occupied structure, or in a separately secured or separately occupied portion of an occupied structure *** when another person other than an accomplice of the offender was present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure, any criminal offense, and that Melvin D. Blackburn did inflict or attempted or threatened to inflict physical harm on [the victim], and pursuant to Revised Code 2941.141, the Defendant did at the time of his commission of the crime of aggravated burglary, have a firearm on [or] about his person or under his control."
 {¶ 17} This is the appropriate jury instruction for aggravated burglary.[5]
 {¶ 18} The requisite mental state for burglary is purposely.[6]
However, the trial court did not give the jury an instruction on the definition of purposely. The lay definition of "purpose" is, "1. The object toward which one strives or for which something exists; goal; aim. 2. A result or effect that is intended or desired. 3. Determination, resolution. 4. The matter at hand; point at issue."[7]
This is consistent with the statutory definition, which states:
 {¶ 19} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."[8]
 {¶ 20} The trial court should have instructed the jury on the definition of "purposely." However, due to the similarity between the lay definition and the statutory definition, we do not see that this error amounted to plain error. Based on the facts of this case, we do not believe the result of the trial would have been any different had the trial court properly given the definition.
 {¶ 21} Moreover, a defendant may form the purpose to commit a criminal offense at any time during the trespass.[9] Since intent exists only in the mind of the accused, it must be determined from the surrounding facts and circumstance.[10] Appellant entered the victim's house through a window while brandishing a loaded handgun. The victim testified that she did not want him in the house and that she tried to prevent him from entering. There was substantial evidence presented to show that at some point, either before or after he entered the victim's residence, appellant formed the purpose to commit a criminal offense: i.e., assault or abduction.
 {¶ 22} Finally, similar to Adams, the only defense to the incident on October 24, 1999, was that appellant was not the person who committed the crime.[11] Specifically, the defense called alibi witness Charlene Robinson, who testified that she was with appellant at his apartment for the entire day of October 24, 1999.
 {¶ 23} Appellant was also charged with violating a protective order or consent agreement. The mental state for this offense is recklessly. The trial court did instruct the jury that it must find beyond a reasonable doubt that the defendant recklessly violated the terms of a protection order. The trial court also stated, "I have defined time previously, venue, knowingly." This instruction seems to tell the jury that the mens rea for the offense was knowingly. Knowingly is a higher standard than recklessly but not as high of a standard as purposely.[12] Recklessly is defined as:
 {¶ 24} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."[13]
 {¶ 25} The trial court's prior definition of knowingly was consistent with the statutory definition, which states:
 {¶ 26} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[14]
 {¶ 27} In addition, the results of the trial would not have been different had the court included an instruction on recklessly. The jury was instructed that the mental state was knowingly, a higher standard than recklessly. The testimony of the victim and her sister indicates that appellant was chasing them in the parking lot. Actively chasing an individual is an intentional act that would meet both the knowingly and recklessly standards.
 {¶ 28} The trial court should have instructed the jury on the definitions of the requisite mental states for counts one and four. However, we do not see that the results of this trial would have been any different had the trial court properly instructed the jury and, thus, the trial court's errors do not rise to the level of plain error.
 {¶ 29} Appellant's first assignment of error is without merit.
 {¶ 30} Appellant's second assignment of error is:
 {¶ 31} "Appellant was denied effective assistance of counsel."
 {¶ 32} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[15] Further, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on lack of sufficient prejudice, *** that course should be followed."[16]
 {¶ 33} Appellant asserts that his trial counsel rendered ineffective assistance for failing to file a notice of alibi pursuant to Crim.R. 12.1. Appellant has not shown that he was prejudiced by this failure. Even though a notice of alibi was not filed, the trial court still permitted the defense to call witnesses, provided the state had an opportunity to interview them prior to their testimony. In fact, the defense did call Charlene Robinson as an alibi witness. Appellant has not demonstrated a claim for ineffective assistance of counsel on this issue.
 {¶ 34} Appellant also claims he was denied effective assistance of counsel, in that his trial counsel did not move for acquittal. A court shall grant a motion for acquittal if the evidence presented is insufficient to sustain a conviction.[17] To determine if there is sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[18]
 {¶ 35} Appellant has not shown any prejudice arising from counsel's performance, because there was sufficient evidence to support his convictions. The testimony of the victim as to the events of October 24, 1999, corroborated by the testimony of the police officer, was sufficient evidence for the jury to find appellant guilty of the first two counts. Accordingly, appellant has suffered no prejudice as a result of his trial counsel's failure to move for acquittal in relation to counts one and two.
 {¶ 36} The sufficiency of evidence presented to find appellant guilty of count four and the effect of trial counsel's failure to move for acquittal on this count will be discussed in our analysis of appellant's fifth assignment of error, infra.
 {¶ 37} Appellant further asserts that he was denied the effective assistance of trial counsel due to counsel's failure to object to the jury instructions at issue in his first assignment of error. Based on our analysis of appellant's first assignment of error, appellant has not shown that he was prejudiced by this failure.
 {¶ 38} Appellant argues that his trial counsel should have objected to the comments made by the assistant prosecutor during closing argument, that "[t]here's a stipulation, he's already violated count IV." The assistant prosecutor did misstate this fact. The stipulation was that appellant had previously pled no contest to a charge of violating a protective order. This prior conviction was one element of count four. Appellant was not prejudiced by this statement, because the trial court adequately explained the elements of count four when instructing the jury. The trial court indicated that the stipulation was only to the prior offense. Finally, the trial court properly informed the jury that appellant pled not guilty in the case before the jury, meaning that he is to be presumed innocent of each offense. Appellant's claim for ineffective assistance of counsel fails on this issue, as any alleged error by his trial counsel for failing to object to the prosecutor's statement was cured by the trial court in its instructions to the jury. Thus, appellant has not shown that he suffered prejudice.
 {¶ 39} Appellant also claims his trial counsel was ineffective by entering into a stipulation regarding the conviction. The prosecution did have the burden of proving a prior conviction for the enhancement of count four under R.C. 2919.27. However, this would have been very simple for the prosecution to do, as it would have merely entailed retrieving the court record and having someone testify to the existence of the conviction. The decision to enter into the stipulation was one of trial strategy. The decision avoided the inevitable testimony about another incident where appellant was harassing the victim. Appellant's trial counsel's performance was not ineffective regarding the choice to enter into a stipulation. The effect of the stipulation will be addressed in much more detail in our analysis of appellant's fifth assignment of error, infra.
 {¶ 40} Appellant's second assignment of error is without merit.
 {¶ 41} Appellant's fifth assignment of error is:
 {¶ 42} "The record is insufficient to support a conviction on Count IV of the indictment and/or the conviction on count IV is not supported by the manifest weight of the evidence."
 {¶ 43} Again, the test for sufficiency of the evidence is whether, after viewing all of the evidence in a light most favorable to the prosecution, a trier of fact could find all of the elements of the offense proven beyond a reasonable doubt.[19] Appellant's counsel failed to move for acquittal, therefore, appellant has waived the issue of sufficiency of the evidence on appeal.[20] However, in light of appellant's second assignment of error, we will address this argument on its merits, as if counsel had filed a motion for acquittal. Because of our current analysis of the topic, we cannot say that counsel's performance rose to the level of ineffective assistance. In addition, we have ruled that appellant's decision to enter into a stipulation to the prior conviction element of the offense was one of trial strategy in our analysis of appellant's second assignment of error.
 {¶ 44} The trial court instructed the jury that there was a stipulation that appellant had a prior conviction for violating a protective order. Appellant claims that there was only a stipulation that he had pled no contest to the violation of the protection order in Warren Municipal Court. In the instant matter, appellant was convicted of count four, violating a protective order or consent agreement, a fifth degree felony. This is a felony because appellant was found guilty of the enhanced version of the statute, an element of which is a prior conviction, or guilty plea, for violating a protective order or consent agreement.[21] Appellant argues that there was insufficient evidence of the prior conviction or guilty plea, as he only stipulated that he had pled no contest.
 {¶ 45} We will address this assignment of error on the basis of whether the trial court committed reversible error in its evidentiary rulings and instructions to the jury. Although this issue was not specifically briefed by the parties, App.R. 12(A)(2) allows an appellate court to consider issues not briefed by the parties.[22] Generally, when a court of appeals chooses to consider an issue not briefed by the parties, the court should notify the parties and give them an opportunity to brief the issue.[23] However, due to the similarity of the issues of the evidentiary rulings and jury instruction regarding the stipulation to the briefed issue in appellant's fifth assignment of error, we will address this issue on the record and the briefs previously filed with this court.
 {¶ 46} The following colloquy was held prior to trial, on the record, in the trial court's chambers:
 {¶ 47} "THE COURT: For the record, before we begin trial, this is Case No. 00-CR-92, State versus Melvin D. Blackburn. One of the indictment counts, count four is for violating a protection order consent agreement. It is my understanding that there will be a stipulation by the defense that there was a prior misdemeanor conviction in the Warren Municipal Court, Case No. 00-CRB-987, wherein Defendant was charged with domestic violence to which he pleaded guilty on 8-16-2000. And that since the felony under which he stands charged, the F-5, count four, in this case, is predicated upon evidence being presented — —
 {¶ 48} "MR. LARGE: [Defense counsel] Is that violation of a protection order or domestic violence?
 {¶ 49} "THE COURT: Protection order. I'm sorry. It is in conjunction with the domestic violence statute. That by the Defendant making the stipulation, it goes to the degree of the penalty and that that will not necessitate the production of evidence on the State's part during the trial to make that finding. The Court — — it is still necessary the way I understand the law, it is still necessary that the jury take that into consideration in making their finding on count four. But they would be told that there's a stipulation and that that fact had been accepted by them and no other proof would be necessary. Is that what the Prosecution wishes to do?
 {¶ 50} "MS. KOOVAR: [Assistant Prosecutor] Yes.
 {¶ 51} "THE COURT: Is that a stipulation on behalf of the Defendant?
 {¶ 52} "MR. LARGE: We'll stipulate that he previously pled no contest to the violation of the protection order in Warren Municipal Court."
 {¶ 53} "A stipulation is a `voluntary agreement *** concerning (the) disposition of some relevant point so as to obviate (the) need for proof.'"[24] Defense counsel stipulated that appellant pled "no contest," which, standing alone, is an insignificant fact to this case. However, the context in which he stipulated to the "no contest" plea led both the trial court and the assistant prosecutor to proceed through the entire trial believing that the stipulation was to a conviction or guilty plea. Following this initial colloquy in chambers, defense counsel made no attempt to clarify that the stipulation was only to a plea of no contest.
 {¶ 54} It is apparent that there was a bargain contemplated by the parties before trial. The bargain was that the defense would stipulate that there was a previous violation of a protection order, in exchange for the prosecution not presenting inherently damaging evidence about the prior conviction at trial. The defense received the benefit of this bargain, as there were no details of the prior conviction presented before the jury.
 {¶ 55} On at least three occasions in the trial, the victim made references to appellant's prior criminal history. Two of these times, defense counsel objected, and the trial court sustained the objection, preventing further testimony. Once, the victim indicated she was not permitted to talk about the other case, which immediately led to the following colloquy, in chambers:
 {¶ 56} "MR. LARGE: There was a misdemeanor or charge and she filed that. If I bring that up, are you going to open the door to his entire misdemeanor record or that entire incident?
 {¶ 57} "MS. KOOVAR: That is why she's doing these things because of these continuous patterns of violence against her. She has filed 30 reports and several motions because each time something happens, she goes and files.
 {¶ 58} "THE COURT: The court has granted in effect a motion in limine, based on the stipulation that it was to be given to the jury. So that we need not get into this. I think if you opened the door, then the whole issue is fair game. You can't limit it."
 {¶ 59} Evidence of other acts under R.C. 2945.59 and Evid.R. 404(B) is to be construed against admissibility.[25] This is because "[t]he average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime."[26] However, evidence of a prior offense must be submitted to the jury when a prior offense is an element of the present offense.[27]
 {¶ 60} Here, the trial court consistently prohibited the victim from testifying about appellant's prior criminal history. Specifically, the trial court noted that there was a stipulation and this testimony was unnecessary. Again, defense counsel remained silent while the trial court prevented witnesses from mentioning appellant's prior criminal record, including the prior misdemeanor conviction for violating a protection order. On appeal, appellant now argues that the state did not provide sufficient evidence of the prior conviction, because the stipulation was only that he pled no contest. Essentially, the state's "hands were tied" as it was prevented from presenting this evidence due to the trial court's interpretation of the stipulation and the court's subsequent erroneous evidentiary rulings.
 {¶ 61} The issue of the stipulation was revisited, outside the presence of the jury, when counsel discussed a stipulation to the authenticity of the civil protection orders themselves. The trial indicated that it would mention the prior stipulation when instructing the jury on the elements of the crime. Defense counsel did not attempt to correct the trial court on its misunderstanding of the prior stipulation.
 {¶ 62} In addition, following the state's case-in-chief, the following exchange occurred in open court:
 {¶ 63} "THE COURT: The State have anything else to offer?
 {¶ 64} "MS. KOOVAR: The State is going to move in the State's Exhibits and the State is going to rest at this time.
 {¶ 65} "THE COURT: Before the State does rest, I mentioned to you what we call a stipulation of fact. There's a stipulation of fact among the parties and that is that Melvin D. Blackburn plead or was found guilty of a violation of the Protection Order in the Warren Municipal Court, Case number 00-CRB-987 on 8-16-2000. That fact will be accepted by you without any further proof. The State rests. Is there any objection to any of the Exhibits?
 {¶ 66} "MR. LARGE: No objections to Exhibits 1 through 6."
 {¶ 67} Again, there was no objection to the reference that the stipulation was that appellant had been convicted or pled guilty to a prior offense. Nor did defense counsel attempt to clarify true nature of the stipulation.
 {¶ 68} As a result of defense counsel's repeated failure to correct the trial court, the court instructed the jury that there was a stipulation for a conviction when there was, in fact, only a stipulation that there was a prior plea of no contest. Defense counsel did not object to this instruction. In addition, the trial court did not permit the state's witnesses to mention the prior conviction because of the court's mistaken belief that there was a stipulation to the prior conviction element of count four. These errors prevented the state from presenting sufficient evidence on the felony charge of violating a protection order.
 {¶ 69} However, we find these errors to be invited. "Under the invited error doctrine, `a party will not be permitted to take advantage of an error which he himself created or induced.'"[28] Not only did defense counsel initially cause the confusion regarding the stipulation; he did nothing to correct the trial court's repeated references to its incorrect perception of the stipulation.
 {¶ 70} Appellant entered into a stipulation that, from his current perspective, was meaningless. However, appellant remained silent and permitted the trial court, assistant prosecutor, and, eventually, the jury to believe that the stipulation was to a prior conviction or guilty plea. The effect of the invited error was that the majority of the participants in the trial, including the state, the trial court, and the jury, were under the assumption that the stipulation was to a prior conviction or guilty plea for violating a protective order.
 {¶ 71} We do not know if the defense counsel intentionally stipulated only to a no contest plea in order to "trick" the trial court and the state, or if defense counsel was also confused and intended to enter into a stipulation that would meet the element of the offense. Either way, defense counsel repeatedly failed to correct the numerous instances of the trial court's incorrect assumptions that the stipulation was to a guilty plea or prior conviction. That failure by defense counsel resulted in the trial court preventing the state from presenting sufficient evidence on that point. It also resulted in the trial court instructing the jury that the state, through the stipulation, met its burden in proving the prior conviction. Since appellant was responsible, at least in part, for the errors made by the trial court, he is not permitted to take advantage of them at this point, pursuant to the invited error doctrine.
 {¶ 72} A reversal of a conviction on a charge on grounds other than the sufficiency of the evidence does not bar future prosecution on the same charge based on double jeopardy.[29] Since appellant cannot receive the benefit of the invited error, we will not enter a judgment of acquittal on this count. Although the state did not meet its burden on this issue, this was due to the trial court's errors in its evidentiary rulings and its improper instruction to the jury, coupled with the invited error of the defense. Accordingly, we are not reversing appellant's conviction on count four because there was insufficient evidence but, rather, because of the errors of the trial court and the fact that these errors were invited by the defense. Therefore, there are no double jeopardy concerns with appellant being retried on this count.
 {¶ 73} Appellant's fifth assignment of error as it relates to the sufficiency of the evidence is without merit. However, based on the above analysis, we are remanding this case to the trial court for a new trial on count four.
 {¶ 74} Since the case is remanded to the trial court for a new trial on count four, Appellant's fifth assignment of error regarding the manifest weight of the evidence is moot.
 {¶ 75} Appellant's sixth assignment of error is:
 {¶ 76} "The prosecutor's conduct at trial was improper causing substantial rights of appellant to be prejudicially affected."
 {¶ 77} Appellant claims that several comments made by the assistant prosecutor during summation constitute prosecutorial misconduct. We do not agree.
 {¶ 78} Counsel is to be given a certain degree of latitude during summation.[30] The test for prosecutorial misconduct is whether the remarks were improper and, if so, was the defendant prejudiced by them.[31]
 {¶ 79} Appellant initially argues that the assistant prosecutor stated that appellant had stipulated to his guilt on count four. We have already determined that appellant was not prejudiced by this comment in our analysis of appellant's second assignment of error, supra.
 {¶ 80} Appellant next asserts that the assistant prosecutor's reference to her professional experience constituted prosecutorial misconduct. Ms. Koovar, the assistant prosecutor, made a reference to the types of cases she normally handles. An attorney should refrain from making references to their personal experience.[32] However, we do not see that appellant was unfairly prejudiced by this remark.
 {¶ 81} Finally, appellant claims that Ms. Koovar's comments regarding the investigation of domestic violence cases amounted to prosecutorial misconduct. During the defense's closing, appellant's trial counsel made a reference to the incident in October of 1999, being a domestic violence situation. Ms. Koovar was attempting to distinguish this case from a typical domestic violence incident. In the process, she stated that certain aspects of the investigation were possibly incomplete due to the way domestic violence cases are generally investigated. She stated that there were no pictures of the broken window and that no one went to the house to check for damages. She was apparently offering her opinion as to reason for the lack of evidence in relation to count three. While these statements were improper, we do not see that appellant was prejudiced as a result of them. This is because the jury found appellant not guilty on count three.
 {¶ 82} Appellant's sixth assignment of error is without merit.
 {¶ 83} Appellant's seventh assignment of error is:
 {¶ 84} "The trial court failed to personally address appellant and ask if he wished to make a statement in mitigation."
 {¶ 85} Appellant claims the trial court erred by violating his allocution rights. A criminal defendant is provided with an opportunity to address the court pursuant to Crim.R. 32, which states, in relevant part:
 {¶ 86} "(A) Imposition of sentence. Sentence should be imposed without unnecessary delay. Pending sentence, the court may commit the defendant or continue or alter the bail. At the time of imposition of sentence, the court shall do all of the following:
 {¶ 87} "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her behalf or present any information in mitigation of punishment."
 {¶ 88} Before sentencing, the trial court asked "[i]s there anything that Defendant or counsel wish to place on the record at this time?" A side bar was held for the court to rule on a motion. The court then stated "[a]pproach the bench, please. Anything else that counsel or Defendant wish to state?" These inquiries did not satisfy the requirement of Crim.R. 32(A). The record does not indicate appellant personally responded to either of the court's questions. Therefore, the trial court did not personally address appellant and ask him if he wished to make a statement.
 {¶ 89} The Supreme Court of Ohio has addressed a similar situation where a trial court addressed a defendant and counsel together, and held "[t]he trial court erred in not explicitly asking [the defendant], in an inquiry directed only to him, whether he had anything to say before he was sentenced."[33] The court further held that "[t]rial courts must painstakingly adhere to Crim.R. 32, guaranteeing the right of allocution. A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse."[34]
We note that in addition to being a defendant's last opportunity to address the court, in cases where the defendant has pled guilty or has exercised his or her constitutional right not to testify, allocution is the only opportunity a defendant has to personally address the court before sentencing.
 {¶ 90} Appellant's seventh assignment of error has merit. If a trial court imposes a sentence without asking the defendant if they would like to make a statement pursuant to Crim.R. 32, the case must be remanded for resentencing "unless the error is invited error or harmless error."[35] Since the trial court failed to comply with Crim.R. 32 and this error was neither invited nor harmless, this case is remanded to the trial court for resentencing.
 {¶ 91} Appellant's third and fourth assignments of error are:
 {¶ 92} "[3.] The trial court failed to comply with R.C.2929.14(E)(4) and R.C. 2929.19(B)(2)(c) in imposing a consecutive sentence.
 {¶ 93} "[4.] The trial court erred by failing to impose the minimum sentence upon appellant."
 {¶ 94} Appellant's third and fourth assignments of errors allege that the trial court erred in sentencing appellant. Having found merit in appellant's seventh assignment of error, these assignments of error are now moot.
 {¶ 95} The judgment of the trial court regarding appellant's convictions on counts one and two is affirmed. The judgment of the trial court regarding count four is reversed. The judgment of the trial court regarding sentencing on all counts is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.
ROBERT A. NADER, J., concurs.
[1] State v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
[2] State v. Jalowiec, 91 Ohio St.3d 220, 234, 2001-Ohio-26.
[3] State v. Adams (1980), 62 Ohio St.2d 151, paragraph two of the syllabus.
[4] Id. at 155.
[5] See 4 Ohio Jury Instructions (2002), Section 511.11, at 379; R.C. 2911.11.
[6] Id.
[7] The American Heritage Dictionary, Second College Edition (1991) 1006.
[8] R.C. 2901.22(A). See, also, 4 Ohio Jury Instructions (2002), Section 409.01, at 57.
[9] State v. Fontes, 87 Ohio St.3d 527, syllabus, 2000-Ohio-472.
[10] State v. Flowers (1984), 16 Ohio App.3d 313, 314. (Overruled on other grounds.)
[11] See State v. Adams, supra.
[12] R.C. 2901.22.
[13] R.C. 2901.22(C).
[14] R.C. 2901.22(B).
[15] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.
[16] Id. at 143, citing Strickland, at 697.
[17] Crim.R. 29(A).
[18] . State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[19] See State v. Jenks, supra.
[20] State v. Perry (Aug. 29, 1997), 11th Dist. No. 94-T-5165, 1997 WL 590789, at *10, citing State v. Roe (1989), 41 Ohio St.3d 18.
[21] R.C. 2919.27(B)(1)(b).
[22] State v. Peagler (1996), 76 Ohio St.3d 496, 499.
[23] Id. at 499, fn. 2.
[24] State v. Abercrombie, 12th Dist. No. CA2001-06-057, 2002-Ohio-2414, at ¶ 27, quoting Burdge v. Bd. of Cty. Commrs.
(1982), 7 Ohio App.3d 356, 358, quoting Black's Law Dictionary (5th Ed. 1979) 1269.
[25] State v. Lowe (1994), 69 Ohio St.3d 527, 530.
[26] State v. Hector (1969), 19 Ohio St.2d 167, 174-175.
[27] See State v. Day (1994), 99 Ohio App.3d 514, 517; R.C.2945.75(B).
[28] State v. Bey (1999), 85 Ohio St.3d 487, 493, quoting Hal ArtzLincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus; and State v. Seiber (1990), 56 Ohio St.3d 4,17.
[29] State v. Tillman (1997), 119 Ohio App.3d 449, 458, citing Columbusv. Marcum (1989), 65 Ohio App.3d 530, 535.
[30] State v. Liberatore (1982), 69 Ohio St.2d 583, 585-586.
[31] State v. Smith (1984), 14 Ohio St.3d 13, 14.
[32] See State v. Bogle (May 17, 1996), 2d Dist. No. 14774, 1996 Ohio App. LEXIS 1932, at *11.
[33] State v. Green, 90 Ohio St.3d 352, 359, 2000-Ohio-182.
[34] Id. at 359-360.
[35] State v. Campbell, 90 Ohio St.3d 320, 326, 2000-Ohio-183.