[Cite as *State v. Ortiz*, 2016-Ohio-974.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No. L-14-1251

      Appellee                                    Trial Court No. CR0201401056

v.

Frederico Ortiz III                                   **DECISION AND JUDGMENT**

      Appellant                                   Decided:  March 11, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**PIETRYKOWSKI, J**.

{¶ 1} Defendant-appellant, Frederico Ortiz, III, appeals the November 19, 2014

judgment of the Lucas County Court of Common Pleas which, following a jury trial

convicting him of aggravated robbery, aggravated burglary, felonious assault, and

attempted burglary, sentenced him to a total of ten years of imprisonment. Because we find that neither the jury nor the court erred, we affirm.

{¶ 2} Appellant was indicted on January 13, 2014, on one count each of aggravated robbery, aggravated burglary, robbery, felonious assault, and attempted aggravated burglary. The charges stemmed from the November 29, 2013 break-ins at two apartments in Oregon, Lucas County, Ohio.

{¶ 3} The matter proceeded to a jury trial on October 20, 2014, and the following relevant testimony was elicited. The victim, M.C., 84 on the day of trial, testified that on the evening of November 29, 2013, he was watching television in his apartment in Oregon, Ohio, when he heard someone knocking at the door. He looked through the peephole and saw a male adjusting his hood. Thinking it might be a neighbor, M.C. stated that he opened the door a bit; the male then burst into the apartment, began punching him and demanded his wallet. M.C. identified appellant as the perpetrator. M.C. stated that once he was knocked down, appellant began "stomping" him.

{¶ 4} M.C. stated that following the attack, he was transported to the hospital where he received stitches to his ear and forehead. M.C. testified that the police presented a photo array and he identified appellant as the perpetrator.

{¶ 5} M.C. was cross-examined about his opportunity to observe and identify the perpetrator given the lighting conditions and the hood over his head. When questioned, M.C. stated that he observed the individual through the peephole for approximately 30 seconds, with his glasses on, and opened the door because he could not hear him.

2.

{¶ 6} M.C.'s neighbor testified that at approximately 9:30 p.m. on the date of the incident, he heard someone yelling that he was dying. He opened his door and observed an individual run out of M.C.'s apartment and run up the stairs. He stated that the person was dark-skinned and likely African American. The neighbor called 9-1-1.

{¶ 7} Victim J.N. testified that she lives in Oregon, Ohio, and that on November 29, 2013, at approximately 10:00 p.m. she was in her bedroom watching television when she heard a "thump" and a "crash." She grabbed her cell phone and a knife, telephoned 9-1-1, and proceeded to the living room where she observed that the sliding glass door was shattered, open about six inches, and that the vertical blinds had been opened. J.N. observed someone just outside her door standing and staring at her. J.N. stated that she looked at him for 10 to 15 seconds before he ran away and that he was wearing a black hoodie. J.N. testified that on December 6, 2013, police presented her with a photo array and that she identified appellant as the individual who broke her sliding glass door.

{¶ 8} J.N. was cross-examined regarding the lighting in her living room at the time she saw the perpetrator and her ability to identify him. J.N. stated that there was a small lamp on but that the back patio was dark. She was also questioned about her 9-1-1 call where she indicated that all she saw was a man in a black hoodie. She explained that after the 9-1-1 call, she walked further into the living room and was able to observe him more closely.

{¶ 9} Neighbor T.R. testified that on the evening of November 29, 2013, she heard a loud crash. She went out on her back patio and noticed a man walking from patio to

3.

patio. She yelled out to him and he ran away. T.R. stated that she went around to the front of the complex and observed an individual get into a truck, but she could not tell if it was the same person.

{¶ 10} Oregon Police Officer Brandon Gardull testified that he responded to the 9-1-1 call by the neighbor of M.C. He described the blood in M.C.'s home and relayed a similar account of the incident as M.C.'s testimony.

{¶ 11} Oregon Police Officer Michael Worden also responded to the 9-1-1 call and observed M.C.'s apartment. While in the apartment, another call of a possible burglary came in from the apartment complex across the street. He proceeded to the complex and observed a male matching the hoodie description exiting a truck in the adjacent apartment complex. The male saw the officer and began running. Wordon stated that he and another officer began chasing the individual through the apartment complex; he was found by a third officer getting out of another vehicle. He was then placed in handcuffs. Appellant was identified as the individual. Wordon testified that he conducted the search of appellant and saw what he believed to be blood spots on his tennis shoes. The shoes were taken as evidence and submitted for testing.

{¶ 12} Oregon Police Officer Brett Smith was also part of the foot chase. He encountered appellant inside a car digging through the glove box and center console. When asked, appellant stated that the car belonged to an unnamed friend. Appellant was then placed in handcuffs.

4.

{¶ 13} Bureau of Criminal Investigation ("BCI") forensic biologist Alex Thiel testified that in this case a hooded sweatshirt, shoes, and a DNA standard of M.C. were submitted for testing. Thiel stated that the shoes presumptively tested positive for blood so he sent it along with M.C.'s DNA standard, to another facility for DNA testing. The sweatshirt was not examined. Hallie Garofalo, also of the BCI, testified that she conducted the DNA testing on the shoes and determined that victim, M.C., could not be excluded as the source.

{¶ 14} An Oregon police officer acted as the blind administrator for the photo array shown to M.C. In other words, he did not know the identity of the suspect. The administrator stated that no one told M.C. who, if anyone, to choose and that he identified appellant as the perpetrator. A second blind administrator presented the photo array to victim J.N.; she also identified appellant as the perpetrator.

{¶ 15} Oregon Police Detective Kevin Spangler investigated the incidents. Spangler testified that he interviewed appellant at the police station. The interview was played to the jury. Spangler compiled the photo array and submitted items to BCI. He also testified regarding the photographs he took of M.C.'s injuries.

{¶ 16} Detective Spangler testified regarding a recorded jail conversation involving appellant; it was played to the jury. The gist of the conversation with appellant's sister was that the incident occurred because appellant was angry and had been drinking and after leaving his apartment "took it out on dude."

5.

{¶ 17} Following the presentation of the evidence and deliberations, the jury found appellant guilty of aggravated burglary, aggravated robbery, felonious assault, and attempted burglary. At his November 18, 2014 sentencing hearing, appellant's counsel argued that his convictions for aggravated burglary, aggravated robbery and felonious assault were allied and subject to merger and a concurrent sentence. The state had no objection to running the aggravated robbery and felonious assault sentences concurrently but requested they run consecutive to the aggravated burglary and attempted burglary convictions. The court agreed and sentenced appellant to a total of ten years of imprisonment. This appeal followed.

{¶ 18} Appellant raises five assignments of error for our review:

Assignment of Error No. 1: Appellant's convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

Assignment or Error No. 2: The facts of this case dictate that the offenses of aggravated burglary, felonious assault, and aggravated robbery should merge.

Assignment of Error No. 3: The trial court erred in sentencing appellant to terms of incarcerat[ion] for the merged offenses.

Assignment of Error No. 4: The trial court erred in imposing restitution pursuant to R.C. 2929.18(A).

Assignment of Error No. 5: The trial court erred in imposing the cost of appointed counsel fees and costs of confinement.

{¶ 19} Appellant's first assignment of error argues that his convictions were not supported by legally sufficient evidence and were against the weight of the evidence. Appellant makes specific arguments regarding his conviction for attempted burglary.

{¶ 20} Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency of the evidence is purely a question of law. *Id.* At its core, sufficiency of the evidence is a determination of adequacy and a court must consider whether the evidence was sufficient to support the conviction as a matter of law. *Id.* The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams,* 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 21} In contrast, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins* at 387. In making this determination, the court of appeals sits as a "thirteenth juror" and, after:

"reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created

7.

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.,* quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} Appellant's attempted burglary conviction, R.C. 2923.02 and 2911.12(A)(1), required that the state prove that appellant knowingly engaged in conduct that, if successful, would have established that appellant entered a structure by stealth or deception with the purpose to commit, in the structure, any criminal offense.

{¶ 23} Intent to commit a criminal offense may be inferred from the surrounding facts and circumstances. *State v. Johnson*, 56 Ohio St.2d 35, 381 N.E.2d 637 (1978). In particular, "it is difficult to ascertain the intent of a person in forcibly entering an occupied structure if he is apprehended [or interrupted] before he commits any overt act inside the premises." *State v. Flowers*, 16 Ohio App.3d 313, 315, 475 N.E.2d 790 (10th Dist.1984), *overruled on other grounds* by *State v. Fontes*, 87 Ohio St.3d 527, 721 N.E.2d 1037 (2000). In such a situation, unless circumstances giving rise to a different inference are present, a reasonable inference arises that the person entered the structure with the intent to commit a theft offense. *Id.*; *State v. Levingston*, 106 Ohio App.3d 433, 436, 666 N.E.2d 312 (2d Dist.1995).

{¶ 24} Here, appellant argued that his conviction was not supported by sufficient evidence and was against the weight of the evidence because it was "plausible" that his

8.

only intent was to break the glass door.  However, in addition to the door being broken J.N. testified that it had been opened six inches.  Appellant further admitted during his police interview that he was a thief and had been breaking into cars that night.  He also stated that he had gone into an apartment after seeing a television but a barking dog scared him away.  These facts lead to a reasonable inference that appellant broke and opened the door with the intent to commit a theft offense.

{¶ 25} Appellant next requests under his first assignment of error, that this court "review the record in its entirety, and determine whether each element of the offenses were met, and supported by sufficient evidence."  Appellant further requests that we "weigh the credibility of all the evidence and determine whether the convictions should be reversed as against the manifest weight of the evidence."  Absent specific arguments and references to the record illustrating deficits in the evidence presented at trial, this court is not charged with searching the record for any potential error.  *State v. Smith*, 6th Dist. Lucas No. L-05-1350, 2007-Ohio-5592, ¶ 53, quoting *State v. Watson*, 126 Ohio App.3d 316, 321, 710 N.E.2d 320 (12th Dist.1998).

{¶ 26} Based on the foregoing, we find that appellant's conviction for attempted burglary was supported by sufficient evidence and was not against the weight of the evidence.  Appellant's first assignment of error is not well-taken.

{¶ 27} In his next assignment of error, appellant argues that under the facts of the case the offenses of aggravated burglary, aggravated robbery, and felonious assault were

9.

allied and should have been merged.  Specifically, appellant contends that the offenses were perpetrated against a single victim with a single state of mind.

{¶ 28} R.C. 2941.25 provides:

(A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B)  Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 29} In *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio clarified how courts are to determine whether offenses are allied. The court noted that the allied-offenses analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct.  *Id.* at ¶ 26.  However, conduct is but one factor to consider when determining whether offenses are allied.  *Id.* at ¶ 21. The court stated:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses:

(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered. *Id.* at ¶ 31.

{¶ 30} The court further explained that offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." *Id.* at ¶ 21. Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. *Id.*

{¶ 31} Utilizing the *Ruff* analysis in the present case, we find that the three offenses were committed with a separate animus and, thus, were not subject to merger. As to the aggravated burglary charge, the evidence presented at trial demonstrated that the aggravated burglary was committed when appellant hit M.C. and forcibly pushed his way into the apartment.

{¶ 32} The aggravated robbery occurred when appellant punched M.C. and demanded his wallet. Once M.C. was knocked to the ground, appellant committed a felonious assault by "stomping" on him. During his recorded jail conversation, appellant stated that at the time of the offenses he had been angry at his roommate and "took it out

11.

on dude." Accordingly, we find that appellant's second assignment of error is not well-taken and is denied.

{¶ 33} Appellant next argues, in his third assignment of error, that the trial court erred when it sentenced him to three separate prison terms of which the court ordered two to be served concurrently. Specifically, appellant argues that because the offenses of aggravated robbery and felonious assault were allied and merged, he could only be sentenced for one of the offenses.

{¶ 34} As set forth above, because we concluded that the offenses of aggravated robbery and felonious assault were not allied, we find that the trial court did not err in sentencing appellant to concurrent sentences. Appellant's third assignment of error is not well-taken.

{¶ 35} Appellant's fourth assignment of error argues that the trial court's imposition of restitution under R.C. 2929.18(A) was plain error. Appellant argues that the order of $103.50 to victim, M.C., and $250 to Wood Springs Properties was not supported by credible evidence.

{¶ 36} R.C. 2929.18(A) provides, in relevant part:

> Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions

12.

* * * . Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, *a presentence investigation report*, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. (Emphasis added.)

{¶ 37} Reviewing the record, we note that the non-disclosable portion of the presentence investigation report is consistent with the trial court's restitution order. Thus, we conclude that the trial court did not commit plain error when it ordered restitution. Appellant's fourth assignment of error is not well-taken.

13.

{¶ 38} In his fifth and final assignment of error, appellant argues that the court erred when it imposed the costs of appointed counsel and confinement without determining appellant's ability to pay. Prior to the imposition of costs of assigned counsel and confinement, the court is not required to conduct a hearing on a defendant's ability to pay; rather, the record must contain some evidence that the court considered the defendant's financial ability to pay. *State v. Baughman*, 6th Dist. Lucas No. L-11-1045, 2012-Ohio-5327, ¶ 43, citing *State v. Maloy,* 6th Dist. Lucas No. L-10-1350, 2011-Ohio-6919, ¶ 13.

{¶ 39} In the present case, the trial court's sentencing judgment entry contains the following language regarding costs:

> Defendant found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law. Defendant ordered to reimburse the State of Ohio and Lucas County for such costs **and to pay restitution in the amount of $353.00**. This order of reimbursement and restitution is a judgment enforceable pursuant to law by the parties in whose favor it is entered. Defendant further ordered to pay the cost assessed pursuant to R.C. 9.92(C), 2929.18 and 2951.021. Notification pursuant to R.C. 2947.23 given.

{¶ 40} At the November 18, 2014 sentencing hearing, the trial court further stated:

14.

You are further ordered to pay all cost of prosecution. You are further ordered to pay restitution in the amount of $103.50 to [M.C.], as well as $250 to Wood Springs Properties, Court appointed counsel fees, and any fees permitted pursuant to Revised Code 2929.18(A)(4), the Court finding the Defendant has the ability to pay these amounts.

{¶ 41} Appellant's argument relies on several cases from this court where we concluded that the trial court failed to properly consider a defendant's ability to pay prior to the imposition of appointed counsel and confinement costs.   Specifically, appellant turns our attention to *State v. King*, 6th Dist. Lucas No. L-12-1013, 2013-Ohio-1265 (only evidence that the defendant completed tenth grade) and *State v. Copeland*, 6th Dist. Lucas Nos. L-11-1103, L-11-1104, L-11-1105, L-11-1106, 2013-Ohio-970 (defendant 71 on release date after 18-year prison sentence and no high school diploma)

{¶ 42} Conversely, arguing that the costs of confinement and appointed counsel were properly imposed, the state cites multiple cases from this court where we concluded that the record supported appellant's ability to pay. *See State v. Flowers,* 6th Dist. Lucas No. L-14-1141, 2015-Ohio-908 (defendant 32 at the time of sentencing, had his GED, and was employed up until arrest); *State v. Heidelburg ,* 6th Dist. Sandusky No. S-12-042, 2013-Ohio-4832 (defendant was 37 years old, completed high school, held a few jobs in the past); *State v. Donaldson,* 6th Dist. Lucas No. L-11-1264, 2012-Ohio-6064 (although 41 and a history of substance abuse, defendant had a job history).

15.

**{¶ 43}** Applying the relevant case law, in the present case the record reveals that at the time of sentencing appellant was 25 years old and had received his GED. Appellant was single with one dependent and a limited work history. We conclude that these facts support a finding of appellant's ability to pay the costs of confinement and appointed counsel. Accordingly, we find that appellant's fifth assignment of error is not well-taken.

**{¶ 44}** On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and sentencing and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                         _____
                                                        JUDGE

Stephen A. Yarbrough, J.

James D. Jensen, P.J.                         _____
CONCUR.                                                   JUDGE

                                                         _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.