[Cite as *State v. Kiger*, 2018-Ohio-4576.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-093** |
| AMI MICHELE KIGER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Painesville Municipal Court, Case No. 2017 CRB 00082.

Judgment:  Reversed and appellant's conviction vacated.

*Ron M. Graham*, 8039 Broadmoor Road, Suite 21, Mentor, OH  44060 (For Plaintiff-Appellee).

*Rick L. Ferrara*, 2077 East 4th Street, 2nd Floor, Cleveland, OH  44115 (For Defendant-Appellant).


THOMAS R. WRIGHT, P.J.

{¶1}    Appellant, Ami Kiger, appeals her conviction for complicity to escape.  She contends her conviction is not supported by sufficient evidence and that the complaint charging her and the judgment entry of conviction are fatally flawed because each references the wrong section of the Ohio Revised Code.  We reverse and vacate Kiger's conviction.

{¶2}    Kiger's first assignment of error asserts:

**{¶3}** "Insufficient evidence supported appellant's conviction for aiding and abetting escape."

**{¶4}** Sufficiency of the evidence is the legal standard "'applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶5}** "'"[T]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis sic.) *State v. Stallings*, 89 Ohio St.3d 280, 289, 731 N.E.2d 159 (2000), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." *State v. Beasley*, ___N.E.3d ___, 2018-Ohio-493, ¶207, *reconsideration denied*, 2018-Ohio-1796.

**{¶6}** Here, Kiger was convicted of aiding and abetting her husband's escape from his work-release program in violation of R.C. 2921.34(A):

**{¶7}** "(1) No person, knowing the person is under detention, * * * or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.

**{¶8}** "* * *

2

**{¶9}** "(3) No person, knowing the person is under supervised release detention or being reckless in that regard, shall purposely break or attempt to break the supervised release detention or purposely fail to return to the supervised release detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."

**{¶10}** R.C. 2923.03(A)(2) complicity states:

**{¶11}** "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

**{¶12}** "* * *

**{¶13}** "(2) Aid or abet another in committing the offense * * *."

**{¶14}** The crime of escape requires a showing that a person acted purposely. "A person acts purposely when *it is the person's specific intention to cause a certain result*, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." (Emphasis added.) R.C. 2901.22(A).

**{¶15}** The state has not filed an appellate brief directing our attention to evidence supporting her conviction.

**{¶16}** The state presented one witness at the bench trial. The defense presented none. Detective John Kelley with the Lake County Sheriff's Office testified that he was investigating a possible escape case involving Richard Coles, an inmate at the Lake County jail. Coles was on work release for two days and Kiger, his wife, was the individual driving him to and from jail. Kelley stated that Coles had "certain rules that were set forth, that he had to go to his place of employment, turn around, come back, no stopping

3

anywhere, anything like that." There was no evidence that Kiger knew the substance of the conditions governing Coles' release.

{¶17} On his second day of work release, January 5, 2017, Coles left the jail to go to work, but then did not return. At about 5 p.m. that day deputies received a call from Coles stating that he was in Cleveland and that he was going to be late returning to jail because of bad weather. Coles was instructed to return to the jail as soon as he safely could. He called again at approximately 10 p.m. stating that he was in a snowstorm on I-271, and the deputies did not hear from him again.

{¶18} Shortly thereafter, Kiger phoned the authorities to advise them that Coles had overdosed and that she was taking him to the hospital.

{¶19} Officers went to the hospital and Coles told them he was overwhelmed in jail and that he had been indicted for another offense as well. According to Kelley, Coles "admitted his guilt to that and the incidents that happened that day."

{¶20} Upon investigating Coles' escape case, Kelley called the number Coles had listed for his employer on his work-release form, Crane Coat Industrial Structure Coating. Coles listed a phone number and a woman's name as the company's manager. Kelley called the number and "when the woman answered the phone, they sounded groggy like they had just woken up * * *." Kelley identified himself and asked the woman if she had an employee named Richard Coles. "The female employee stated that they did and he was a subcontractor for the company. [Kelley] thanked the female for her time and the call was ended. It was very brief."

{¶21} Kelley thereafter went to Kiger's home to let her know that Coles was okay and to further investigate the circumstance surrounding the prior evening. He knocked

4

on her door for several minutes without anyone answering, so he called his office to secure Kiger's phone number. The secretary gave Kelley the number listed for Kiger, and it was the same number Kelley had called that Coles had listed as his employer's phone number.

**{¶22}** Kelley then knocked on the door again and Kiger answered it. She let him in and he "asked her what had happened the night before (inaudible) that she knew that she shouldn't have brought [Coles] back to the trailer. Apparently what had happened was she brought [Coles] from Cleveland to their trailer because she stated he was soaking wet and she didn't feel that he should go back to jail in wet clothing."

**{¶23}** Kelley also explained that when he asked Kiger about the telephone call, she eventually admitted to lying to him. But she denied providing the false information on the form. Instead, she said the form Coles provided listed a company that did not exist, but "she said that the place was run by somebody by the name of George, * * *. She claimed they would go back there and they would work in a warehouse behind like what almost sounded like a chop shop somewhere in Downtown Cleveland."

**{¶24}** Kiger told Kelley that she picked Coles up both days from the jail and then brought him back home, but it was her belief that he then went to work.

**{¶25}** On cross-examination Kelley confirmed that Coles was required to review and initial the rules governing his work release, but that Kiger did not. He also testified that the phone number listed for Coles' employer was provided by Coles, not Kiger, and that Kiger denied creating or signing the document.

**{¶26}** There was no evidence presented that Coles did not actually go to work on these two days and nothing showing that Kiger had any knowledge of the conditions

governing her husband's work release. Thus, without proving she knew of the conditions governing his release from jail, the state could not have proven that she acted with the specific intention to assist her husband to violate or attempt to violate the conditions.

**{¶27}** The state seems to have presented two theories as to Kiger's guilt to complicity to escape. First, it attempted to prove that she purposely attempted to break her husband's detention when she answered her phone and stated that she worked for Crane Coat Industrial Structure Coating and that Coles was one of her subcontractors. This coupled with the fact that he did not actually go to work and she was aware of this fact may have been sufficient. However, there was nothing evidencing that he was not actually working either day. In fact, Kelley's testimony based on Kiger's statements to him made it sound like he was working behind a "chop-shop" or at least that Kiger believed he was working. The state failed to present any evidence showing that she specifically intended to aid Coles in breaking his detention or attempting to break his detention.

**{¶28}** Although it is reasonable to infer that Kiger knew Coles was working for someone other than the listed company based on her admission that she answered her phone and confirmed Coles was working as a subcontractor for Crane Coat, there was no evidence showing that Kiger knew that a condition of Coles' release was that he had to work for the employer listed on his form. And although the state proved Kiger lied on the phone, this alone does not establish that she purposely aided him in breaking his detention. Accordingly, no rational trier of fact could have found the essential elements of the charged offense proven beyond a reasonable doubt based on this theory.

**{¶29}** The state's second theory of Kiger's culpability is that she purposely assisted Coles in breaking his conditions of detention when she picked him up from jail

6

and drove him to their home and not directly to his place of employment, or when she drove him to the hospital instead of returning him to jail. Again, however, the state did not establish that Kiger knew of the terms of his work release at the time. Absent evidence that she had knowledge that he was required to go directly to his place of employment, it failed to prove she was complicit in his violating his conditions of detention or that she specifically intended to aid him in breaking this condition of his detention.

{¶30} Moreover, the state did not show that Kiger's act in driving Coles to the hospital instead of jail was pursuant to her specific intent to violate the terms of his work release. Instead, Kelley described Kiger as upset because she believed Coles had tried to take his own life, and she even called the jail to advise them of his location. Thus, her driving him to the hospital instead of jail does not demonstrate that she had the specific intent to aid in his breaking his work-release conditions because there was no evidence showing that she had knowledge of the conditions. No rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.

{¶31} Accordingly, Kiger's first assigned error has merit.

{¶32} Kiger's second assigned error states:

{¶33} "The state of Ohio presented insufficient evidence of appellant's guilt of the crimes as charged—theft and escape—on an otherwise defective complaint."

{¶34} Kiger contends the complaint charging her and the judgment entry of conviction refer to the wrong section of the Revised Code, and as such, her conviction cannot stand. In light of our finding that her conviction is not supported by sufficient evidence, this assigned error is moot, and we need not address it. App.R. 12(A)(1)(c).

7

**{¶35}** Finding Kiger's first assigned error has merit, we reverse the trial court's judgment and vacate her conviction. *State v. Kareski,* 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410, ¶26.

CYNTHIA WESTCOTT RICE, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

––––––––––––––––

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

**{¶36}** I respectfully dissent from the majority's decision to reverse Kiger's conviction for Complicity to Escape due to a lack of sufficient evidence. A full and thorough consideration of the facts and circumstances in the record reveals that Kiger aided and abetted her husband, Coles, in his escape from his work-release program. That being the case, the conviction was supported by sufficient evidence and should be upheld.

**{¶37}** The majority's opinion primarily contends that Kiger, since she was unaware of the specific terms of Coles' work release, did not have the requisite intent to aid or abet him in committing the crime of Escape. While it may not have been directly proven that Kiger was aware of the exact terms of her husband's work release, a close review of the facts of this case would lead a rational trier of fact to find the elements of the offense were proven beyond a reasonable doubt.

**{¶38}** "Intent to commit a criminal offense may be inferred from the surrounding facts and circumstances." *State v. Ortiz*, 6th Dist. Lucas No. L-14-1251, 2016-Ohio-974,

8

¶ 23, citing *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978). The level of proof of intent seemingly required by the majority makes it difficult to convict those who do not specifically admit to their intent or discuss it with others. "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." (Citation omitted.) *In re Washington*, 81 Ohio St.3d 337, 340, 691 N.E.2d 285 (1998).

{¶39} Kiger's conduct evidences that she participated in behavior that was evasive, dishonest, and consistent with one attempting to aid in violating the terms of work release. She admitted lying to police by falsely implying that she was Coles' employer when they called her cell phone number, which had been provided by Coles as the phone number of his employer. This demonstrates that she was aware Coles needed to be working in order to comply with the terms of his work release. If this was not the case, there would have been no reason for Kiger to aid him in the evasion of the terms of his program.

{¶40} Further, Kiger drove Coles from his detention to her home rather than to work. In addition, one night, rather than returning him to detention following "work," she drove him back to their trailer because he was "soaking wet and she didn't feel that he should go back to jail in wet clothing." As one who transported him from detention on multiple occasions, it would be more than evident what time he would need to return. It is not unreasonable to infer that Kiger would be aware a person on work release is not free to make decisions to return home rather than to the facility where he was detained.

9

One does not need to review the terms of an individual's work release to understand that a person on work release is not permitted to do as he chooses.

{¶41} It is reasonable to infer from the foregoing Kiger intended to aid in committing conduct that was impermissible and led to the charge of Escape, especially given that the offender was her husband. *See State v. Smith*, 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 7, quoting *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, ¶ 13 ("[t]he criminal intent of the aider and abettor 'can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed'").

{¶42} The majority contends that the testimony demonstrated "Kiger believed [Coles] was working." However, if Kiger did believe Coles had legitimate employment, it would be unnecessary to pretend that she was his employer and/or she worked for the company that employed him. Rather, a reasonable person would express confusion as to why the officer believed she was the employer and direct him to contact Coles' real employer. This also does not explain why she failed to return Coles to detention.

{¶43} The majority also states that "there was no evidence showing that Kiger knew that a condition of Coles' release was that he had to work for the employer listed on his form." It hardly seems believable that a person would not understand a prisoner on work release would have to work for an employer disclosed to prison authorities. Further, this again does not explain the reasons for her deception, which were logically for the purpose of aiding Coles in being deceptive and failing to comply with the terms of his work release. Finally, it must be made abundantly clear that the circumstantial evidence in this case possesses the same value as direct evidence and weighs strongly against Kiger's arguments. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991).

**{¶44}** For the foregoing reasons, there was more than sufficient evidence to support Kiger's conviction for Complicity to Escape and, thus, principles of justice dictate that this conviction should be upheld.